WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Ferber,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>    Defendant. | No. CV-13-01549-TUC-CRP<br><br>**ORDER** |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c). Pending before the Court are Plaintiff's Opening Brief (Doc. 16) ("Plaintiff's Brief"), Defendant's Opposition to Plaintiff's Opening Brief (Doc. 18) ("Defendant's Brief"), and Plaintiff's Reply (Doc. 19). For the following reasons, the Court remands this matter for an immediate award of benefits.

**BACKGROUND**

Plaintiff was 35 years of age on the August 25, 2006 alleged disability onset date, and 40 years of age on her date last insured, December 31, 2011. (AR. 70) Plaintiff has a high school education and worked in the past as an eligibility worker, retail store manager and receptionist. (AR. 154)

On November 8, 2010, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d),

alleging disability since August 25, 2006, due to two lumbar surgeries and continued back pain. (Administrative Record ("AR"), 153) The application was denied initially and upon reconsideration. (AR. 91-94, 100-102) Plaintiff appeared with counsel and testified before an Administrative Law Judge ("ALJ") at an administrative hearing on May 14, 2012. (AR. 30-67) At the hearing before the ALJ, Plaintiff testified that she can walk for less than five minutes at a time before having to stop and shift. (AR. 43) Plaintiff can stand for about five minutes before having to shift her body. (AR. 43) Plaintiff also testified that she can sit for only five minutes at a time before needing to walk or move around before she can sit again. (AR 43) With her right arm, Plaintiff can lift in between five to ten pounds, and with her left arm, between five to six pounds. (AR. 43) Plaintiff testified that she is able to take care of her two small children, but that she has the flexibility to be able to stop and rest while caring for them at home. (AR. 45) On a scale or one to ten, Plaintiff stated that her pain is at a six to seven every day. (AR. 45) Plaintiff takes Celebrex, an anti-inflammatory, daily, and takes Percocet each night around the time her husband arrives home from work to manage pain. (AR. 46)

The ALJ reviewed Plaintiff's earning statements with her during the hearing and Plaintiff agreed that she worked a full-time job with Sears & Roebuck for twelve years until 2002. (AR. 35) She was laid off from Sears and began working as a receptionist at Radiology, Ltd. for one year. (AR. 37) Plaintiff then worked for the Department of Economic Security ("DES") as an eligibility worker for 11 months. (AR. 37) Plaintiff testified that she couldn't perform her past job as a receptionist because her back pain and leg pain makes it difficult to sit for long periods of time and hinders her ability to concentrate on her work. (AR. 37)

A vocational expert ("VE") testified that Plaintiff's past relevant work as an eligibility worker is sedentary, with a specific vocational preparation level of 6, requiring one to two years of experience. (AR 59) The VE further stated that Plaintiff's past relevant work as a receptionist is classified as sedentary and semi-skilled. (AR. 60) The VE testified that a hypothetical individual would be able to perform Plaintiff's past

1  relevant work as an eligibility worker and as a receptionist when the ALJ posed the
2  following hypothetical limitations: occasionally lift up to ten pounds; can stand or and
3  walk four out of every eight hours; can sit six out of every eight hours, with a sit/stand
4  option every hour; cannot climb ladders ropes or scaffolds; can occasionally ramps and
5  stairs; can occasionally balance, stoop, kneel, crouch or crawl; can attend and concentrate
6  for two hours, needing to take a  15 minute break or lunch break after every two hours;
7  should not be exposed to concentrated levels of extreme cold or hazards. (AR. 59)

8  The VE testified that the ability to do even sedentary work would be eliminated if
9  a person cannot attend and concentrate in two hour blocks of time throughout an eight
10 hour work day. (AR. 61) The VE further testified that that the ability to do past relevant
11 work as an eligibility worker or receptionist would not be an option if a person can work
12 only three to four hours per day, three to four days per week. (AR. 62-63)

13 The ALJ issued a decision on June 18, 2012, finding Plaintiff not disabled within
14 the meaning of the Social Security Act. (AR. 15-25) This decision became the
15 Commissioner's final decision when the Appeals Council denied review. (AR 1-4).
16 Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).
17 (Doc. 16)

18 **STANDARD**

19 Congress has provided a limited scope of judicial review of a Commissioner's
20 decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made
21 through an ALJ, when the determination is not based on legal error and is supported by
22 substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir.1985); *Tackett v.*
23 *Apfel,* 180 F.3d 1094, 1097 (9th Cir.1999). "The [Commissioner's] determination that a
24 plaintiff is not disabled will be upheld if the findings of fact are supported by substantial
25 evidence." *Delgado v. Heckler,* 722 F.2d 570, 572 (9th Cir.1983) (citing 42 U.S.C. §
26 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger,* 514
27 F.2d 1112, 1119 n 10 (9th Cir.1975), but less than a preponderance. *McAllister v.*
28 *Sullivan,* 888 F.2d 599, 601–02 (9th Cir.1989). Substantial evidence "means such

1 evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze,* 348 F.2d 289, 293 (9th Cir.1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir.1989) (quoting *Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir.1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services,* 839 F.2d 432, 433 (9th Cir.1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen,* 812 F.2d 1226, 1229–30 (9th Cir.1987).

**DISCUSSION**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability

consists of both medical and vocational components. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir.2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a) (4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a) (4)(v); *Bowen v. Yuckert,* 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir.1971); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999). The initial burden is met once

plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984).

**THE ALJ'S FINDINGS IN PERTINENT PART**

The ALJ found that Plaintiff did not in engage is substantial work activity during the period from her alleged onset date of August 25, 2006 through her date last insured of December 31, 2011. (AR. 17) The ALJ further found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, status post two laminectomies with radiculopathy. (AR. 17). He determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (AR. 17) The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§404.1567(a)  (AR. 18).  The ALJ, after considering testimony from the VE, concluded that Plaintiff "was capable of performing past relevant work as an eligibility worker or a receptionist.  This work did not require the performance of work related activities precluded by the claimant's residual functional capacity...."  (AR. 24). Therefore, the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act at any time from August 25, 2006 through her date last insured, December 31, 2011.  (AR. 25).

**THE ALJ'S REJECTION OF THE TREATING DOCTOR, DR. OSBORNE, WAS IMPROPER**

The record reflects that Robert C. Osborne, M.D., has been Plaintiff's treating pain specialist since 2004. (*See* AR. 362).   Dr. Osborne's diagnoses includes: post-traumatic degenerative disc disease of the lumbar spine, lumbar facet arthropathy, and probable thoracic disc disease. (AR. 286, 277, 353).  Plaintiff's medications include Celebrex and Percocet. (AR. 486)  Plaintiff suffered a back injury in 1992 and has undergone physical

therapy and two lumbar discectomy surgeries in 1994 and 2002 that were only temporarily beneficial. (*See* AR. 302, 327 328, 338, 372, 471).

On February 7, 2012, Dr. Osborne opined, *inter alia,* that Plaintiff could not work full-time but was limited to part-time sedentary work for three to four hours per day, and she would be expected to miss an average of 8 workdays per month as a result of disability and normal illnesses. (AR. 476). He also indicated that Plaintiff could sit in a clerical position only occasionally, thirty to forty minutes at a time, for a total of two to three hours per day, and could stand for fifteen to twenty minutes at a time for a total of one hour per day. (AR. 476) Dr. Osborne opined that Plaintiff should drive a car or light truck only 30 minutes at one time for a total of one and a half to two hours per day, and that Plaintiff could ride in a vehicle for one hour at a time for a total of two to three hours per day. (AR. 476) Dr. Osborne determined that Plaintiff should change positions frequently during the day from sitting to standing or walking at least once per hour and avoid bending, squatting, crouching or kneeling. (AR. 476-477). According to Dr. Osborne, Plaintiff should also avoid sudden temperature or humidity changes, exhaust fumes, smoke or dust, strong odors and moving machinery. (AR. 477) Ultimately, if employment were available with all of the described restrictions, Dr. Osborne believes Plaintiff could work three to four hours per day and three to four days per week. (AR. 477)

In April 2011, examining physician, Jerome Rothbaum, M.D., diagnosed Plaintiff with lumbar degenerative disc disease with left lumbar radiculopathy status post laminectomy (two). (AR. 305) Dr. Rothbaum opined that Plaintiff should be capable of standing and walking a total of four to five hours per day, one hour at a time, with a five minute break. (AR. 306) Additionally, Dr. Rothbaum found Plaintiff is limited to sitting for a total of four to five hours per day, shifting positions hourly. (AR. 306) Thus, Dr. Rothbaum's determination of Plaintiff's restrictions is largely in line with those of Dr. Osborne insofar as both doctors conclude that Plaintiff cannot sit, stand or walk for a full eight hour workday. (AR. 306, 476-477)

1  In determining the Plaintiff's RFC, the ALJ gave "very little weight" to the treating physician, Dr. Osborne. (AR. 22)  The ALJ's RFC assessment limiting Plaintiff to sedentary work is consistent with Dr. Osborne's opinion; however, the ALJ's RFC assessment deviated from Dr. Osborne's findings, *inter alia,* in that that Plaintiff could not work full-time and could not sit for more than three to four hours in an eight-hour workday.  The ALJ stated that Dr. Osborne's 2012 opinion was "…internally inconsistent, not supported by the evidence of record, including his own objective clinical findings, and is inconsistent with the claimant's allegations." (AR. 22).

It is well-settled that the opinions of treating physicians, like Dr. Osborne, are entitled to greater weight than the opinions of examining or non-examining physicians. *Andrews v. Shalala,* 53 F.3d 1035, 1040-1041 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  Medical opinions and conclusions of treating physicians are accorded special weight because treating physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Winans*, 853 F.2d at 647; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'"); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) ("We afford greater weight to a treating physician's opinion because he is employed to cure and has a greater opportunity to know and observe the patient as an individual.")(internal quotation marks and citation omitted); 20 C.F.R §§ 404.1527, 416.927 (generally, more weight is given to treating sources).

An ALJ may reject a treating physician's uncontradicted opinion only after giving "'clear and convincing reasons' supported by substantial evidence in the record." *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998) (*quoting Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995)).  "Even if the treating doctor's opinion is contradicted by another doctor,

the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick,* 157 F.3d at 725 (citing *Lester,* 81 F.3d. At 830).

"'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Tommasetti*, 533 F.3d at 1041 (quoting *Magallanes,* 881 F.2d at 751). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn* v. *Astrue,* 495 F.3d 625, 632 (9th Cir. 2008) (citations omitted). Treating source medical opinions are still entitled to deference and, "[i]n many cases, . . . will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

The ALJ took issue with Dr. Osborne's determination that Plaintiff could not sit for more than thirty to forty minutes at a time when he also stated that she could ride in a vehicle for one hour at a time. (AR. 22) This assessment, according to the ALJ, lacks supporting evidence in the record, however, The fact that Plaintiff must shift frequently when sitting is well developed in the record (*See* AR. 313, 356, 476) Even the examining physician, Dr. Rothbaum, opined that Plaintiff would need to shift positions hourly when sitting. (AR. 306) As the Plaintiff correctly points out, *riding* in a car and *driving* a car are two different activities. (Plaintiff's Brief, p. 18-19) While riding in a car, Plaintiff is able to recline or otherwise shift positions in order to relieve pain. Whilst driving a car, Plaintiff would be required to maintain a firm seated position not conducive the frequent adjustments necessary to manage her back pain. For these reasons, Dr. Osborne

determined that Plaintiff could *ride* in a car for one hour at a time but could *drive* a car for only thirty minutes at a time. (AR. 476)

Furthermore, the ALJ took issue with Dr. Osborne's deduction that Plaintiff should be limited in the use of her hands and arms. (AR. 22) But Plaintiff's restricted use of her hands and arms is well documented in that the treating physician, the examining physician and the reviewing physician all indicated that Plaintiff was limited in the amount of weight she could lift. (AR 85, 306, 476) The ALJ also agreed that Plaintiff's ability to lift was limited to occasionally lifting up to ten pounds. (AR 18) Common sense dictates that when lifting one is utilizing hands and arms. Again, the Plaintiff persuasively argues that "just as lifting with the hands results in force on the spine so too does using the hands [and arms] for functions other than lifting." (Plaintiff's Brief, p. 19) The ALJ fails to offer any other specific or legitimate reasoning for rejecting this contention.

The ALJ also found Dr. Osborne's assessment debilitated in that it conflicted with Plaintiff's own allegations: "[Plaintiff's] allegations have been undermined by her physician's opinion, and *vice versa*, which diminishes the credibility of the allegations in general." (AR. 22) The ALJ provides no substantial justification for dismissing Dr. Osborne's opinion on the basis that it does not comport, exactly, with Plaintiff's own testimony. Where treating physician opinions have been discredited, in part, because of conflicting testimony by a claimant it has been a critical conflict, supported by other substantial evidence on the record. (*See* Magallanes v. Bowen, 881 F. 2d 747, 751-52 (9th Cir. 1989) (upholding ALJ's decision to reject treating physician's opinion that conflicted with laboratory test results, reports from examining physicians and testimony from the claimant.) This case is distinguishable in that the ALJ's rejection of Dr. Osborne's objective opinion differing from Plaintiff's subjective testimony is not supported by substantial evidence in the record.

Equally unavailing is the ALJ's finding that Dr. Osborne is not credible because Plaintiff did not exhibit upper and lower extremity loss of muscle tone, or atrophy, which

he contends are the expected side effects of Plaintiff's limitations. (AR. 23) Neither the ALJ nor Defendant cite any statement by any medical provider of record indicating that loss of muscle tone, muscle atrophy, or the other side effects mentioned by the ALJ would necessarily accompany Plaintiff's impairments. The Ninth Circuit has affirmed the denial of benefits where, *inter alia,* the plaintiff alleged she had to maintain a fetal position all day because of constant pain but she exhibited no physical signs including muscle atrophy of a totally incapacitated person. *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999). Plaintiff's case is distinguishable from *Meanel*. Plaintiff does not claim to be totally incapacitated. The instant record reflects, and the ALJ acknowledges, Plaintiff moves about her seeing to her personal needs and caring for her children. (*See* AR. 19). Arguably, these activities forestalled loss of muscle tone or atrophy. There is simply no basis on this record to disbelieve Dr. Osborne because Plaintiff did not exhibit the side effects described by the ALJ. *See Hardt v. Astrue,* 2008 WL 349003, *3 (D.Ariz. Feb. 6, 2008) (finding no basis to disbelieve plaintiff who did not experience diffuse atrophy or muscle wasting where "[t]he record established (and the ALJ found) that [she] is able to perform some daily activities [and]...participated in treatments and a home stretching program.")

Finally, the ALJ also rejected Dr. Lin's opinion because he "only sees the [Plaintiff] twice a year for medication refills" and because the record does not reflect that a physical examination was performed at each visit. The applicable regulation, 20 C.F.R. § 404.1502, defines a "treating source" as follows:

> "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your

treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)."

The wording of the definition of "treating source" has remained constant since 1991 and is recognized by the Ninth Circuit (*See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (*citing Rodriguez v. Bowen,* 876 F.2d 759, 761 (9th Cir.1989)) (It is not necessary, or even practical, to draw a bright line distinguishing a treating physician from a non-treating physician. Rather, the relationship is better viewed as a series of points on a continuum reflecting the duration of the treatment relationship and the frequency and nature of the contact.) It is evident from the record that Dr. Osborne, a pain specialist, has been treating Plaintiff since at least late 2004. As a matter of continuum of care and duration, Dr. Osborne clearly meets the regulatory standard for a treating source and the ALJ does not offer any evidence that bi-yearly visits to a pain specialist is atypical for Plaintiff's specific condition.

Defendant's reasoning in support of the ALJ's decision is simply a regurgitation of the ALJ's opinion without offering additional support from the record. The ALJ did not set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation thereof, and make a finding based on such. For the above-stated reasons, the ALJ failed to set forth specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Osborne's assessed restrictions.

**REMAND FOR AN IMMEDIATE AWARD OF BENEFITS**

It is well-settled that "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law." *Lester,* 81 F.3d at 834 (citation omitted); *Hammock v. Bowen,* 879 F.2d 498 (9th Cir. 1989) (applying credit-as-true rule to medical opinion evidence). *See also Garrison,* 759 F.3d 995, 1017-21 (9th Cir. 2014) (reaffirming the credit-as-true rule).

> Remand for an award of benefits is appropriate where:
> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

> testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison,* 759 F.3d at 1020 (footnote and citations omitted); *see also Benecke,* 379 F.3d at 593(citations omitted). The *Garrison* court also noted that the third factor "naturally incorporates what we have sometimes described as a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Garrison,* 759 at 1020 n. 26 (citing *Smolen v. Chater,* 80 F.3d 1273, 1292 (1996)). Thus, where the test is met, the Ninth Circuit "take[s] the relevant testimony to be established as true and remand[s] for an award of benefits[,]" *Benecke,* 379 F.3d at 593 (citations omitted), unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison,* 795 F.3d at 1021 (citations omitted).

    Here, remand for an immediate award of benefits is appropriate. The record has been fully developed and remand for further administrative proceedings would serve no useful purpose. The VE testified that full-time work would be precluded if a person can only work three to four hours a day at the sedentary level. (AR. 62). *See e.g. Garrison,* 795 F.3d at 1022 n. 28 (where the VE answered that a person with the plaintiff's RFC would be unable to work, "we can conclude that [the plaintiff] is disabled without remanding for further proceedings to determine anew her RFC."). RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis. SSR 96-8P. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." (*Id.*) On this record, crediting Dr. Osboirne's opinion as true results in the unquestionable conclusion that Plaintiff is disabled under the Act. The simple fact that Plaintiff cares for her children at home, while able to take the frequent adjustments or breaks necessary to manage her pain, does not create a serious doubt as to whether she is disabled within the meaning of the Act.

- 13 -

**CONCLUSION**

The record is fully developed and, when considering the record as a whole, there is no reason for serious doubt as to whether Plaintiff is disabled.[2] Plaintiff's treating physician opined that she was restricted to part-time sedentary work. The ALJ failed to set forth specific and legitimate reasons supported by substantial evidence for rejecting that opinion. The VE agreed that if Plaintiff would be precluded from full-time work if she were limited to sedentary work for three to four hours per day. Plaintiff is, therefore, entitled to benefits.

Accordingly,

IT IS ORDERED that this action is REMANDED to the Commissioner for immediate calculation and award of benefits.

The Clerk of Court is DIRECTED to enter Judgment accordingly and to close its file in this matter.

Dated this 31st day of March, 2015

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

---

[2] Because Plaintiff has established that she is disabled under the Act in light of the ALJ's erroneous rejection of Dr. Osborne's opinion, there is no need to address Plaintiff's alternative arguments.

- 14 -